No. 797 September 4, 2025 295

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

T. D. T,
*Petitioner-Respondent,*

*v.*

RICK LANE,
*Respondent-Appellant.*

Klamath County Circuit Court
24SK00103; A183708

Kelly N. Kritzer, Judge.

Argued and submitted July 7, 2025.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin PC.

No appearance by respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed.

**AOYAGI, P. J.**

Respondent appeals a judgment entering a permanent stalking protective order (SPO) against him for the protection of petitioner. Petitioner and respondent are next-door neighbors. They had contentious interactions over a four-year period, culminating in a physical altercation in January 2024. Respondent argues that the trial court erred by granting the SPO because there were not two or more qualifying contacts as required by ORS 30.866. We agree and, accordingly, reverse.[1]

*Standard of review.* Respondent challenges the sufficiency of the evidence. The claim of error is preserved. *See D. O. v. Richey*, 301 Or App 18, 27, 456 P3d 348 (2019) (such a claim is preserved if the respondent's arguments to the trial court were sufficient to alert the court that he was claiming the record contained legally insufficient evidence to meet the statutory standard for an SPO). We view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to granting the SPO and assess whether, when so viewed, the record was legally sufficient for an SPO. *C. L. C. v. Cordell*, 318 Or App 654, 655, 508 P3d 73 (2022).

*Legal standard.* SPOs are governed by ORS 30.866. To obtain an SPO, the petitioner must prove by a preponderance of the evidence that: (1) the respondent made two or more unwanted contacts with the petitioner or a member of the petitioner's immediate family or household within the past two years; (2) each contact gave rise to subjective alarm that was objectively reasonable; and (3) the contacts taken together have given rise to subjective apprehension regarding the personal safety of the petitioner or their immediate family or household member that is objectively reasonable. *C. J. R. v. Fleming*, 265 Or App 342, 348, 336 P3d 534 (2014). It must also be proved that the respondent acted with at least a reckless mental state. ORS 30.866; *C. Q. R. v. Wafula*, 305 Or App 344, 353, 471 P3d 786 (2020).

For purposes of an SPO, to "alarm" someone "means to cause apprehension or fear resulting from the perception

---

[1] Respondent also assigns error to the firearm restriction included in the SPO. Given that we reverse the SPO, we do not reach that assignment of error.

of danger." ORS 163.730(1). In this context, "danger" refers to "a threat of physical injury, not merely a threat of annoyance or harassment." *K. R. v. Erazo*, 248 Or App 700, 707, 274 P3d 214 (2012).

When speech is involved, there are also constitutional considerations. Only speech that constitutes a "threat" may be a qualifying contact. *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) ("If the contact in question amounts to communication by speech or writing, only a threat will be sufficient to 'cause apprehension or fear resulting from the perception of danger,' as ORS 163.730 requires."); *K. R.*, 248 Or App at 705 ("[I]f a 'contact' involves speech, Article I, section 8, of the Oregon Constitution requires proof that it is a threat."). A threat "is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Rangel*, 328 Or at 303. It excludes "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *Id*. (internal quotation marks omitted). Speech that does not qualify as a threat under *Rangel* may not itself be treated as a qualifying contact for SPO purposes, but it may still be considered as "relevant context" for nonexpressive conduct. *Habrat v. Milligan*, 208 Or App 229, 237, 145 P3d 180 (2006).

If the petitioner meets their burden of proof, they are entitled to an SPO. Unlike some protective orders, which expire after a set amount of time unless renewed, SPOs are indefinite in duration. *See* ORS 30.866(2) (providing that, once a temporary SPO is granted, the respondent must "personally appear before the court to show cause why the temporary order should not be continued for an indefinite period").

*Analysis*. In this case, the petition was filed on January 8, 2024, so petitioner needed to prove two qualifying contacts between January 8, 2022, and January 8, 2024. ORS 30.866; *C. J. R.*, 265 Or App at 348. The trial court did not identify the contacts on which it was relying to issue the SPO, stating only that, given the absence of any other no-contact order between the parties (such as might accompany criminal charges), the court would grant the SPO.

Respondent assumes *arguendo* for purposes of appeal that the evidence was legally sufficient to establish a qualifying contact on January 2, 2024. On that day, viewing the evidence in the light most favorable to petitioner, respondent yelled over the fence for petitioner's three-year-old granddaughter to "shut her fucking mouth"; petitioner responded not to talk to his granddaughter that way; respondent said to "come over"; petitioner told his wife to call the police, which she did, and the police dispatcher directed petitioner to stay in his own home until they arrived, which he declined to do; petitioner went onto respondent's property; words were exchanged; and petitioner and respondent ended up in a physical fight during which respondent and his adult son pinned petitioner to the ground, respondent put his thumbs in petitioner's eyes, and petitioner bit respondent. The fight ended when respondent and his son went inside respondent's home, as petitioner threw a piece of wood at them. Petitioner went to the hospital and was determined to have a left-eye hematoma and right-eye bruised pupil.

Because respondent assumes *arguendo* that the January 2 incident is a qualifying contact for SPO purposes, the only question is whether there was sufficient evidence to establish a second qualifying contact. We conclude that there was not. The trial court did not identify what it considered to be a second qualifying contact, and petitioner has not appeared on appeal, so we have considered the entirety of the record.

Given the legal standard, we limit our discussion to evidence of respondent threatening petitioner, not the other way around, and again view the evidence in the light most favorable to petitioner. *C. L. C.*, 318 Or App at 655. We also limit our discussion to evidence of incidents in the two years preceding the filing of the petition. Although earlier events could provide context for later incidents, they cannot themselves be qualifying contacts. *C. J. R.*, 265 Or App at 351.

There are only two potentially qualifying contacts during the relevant two-year period.[2] First, in summer

---

[2] The parties had been neighbors for four years when petitioner filed for an SPO. Although the January 2 incident was the first physical altercation to occur, there had been a longstanding dispute over noise from petitioner's backyard.

2023, respondent yelled at petitioner's wife outside petitioner's house, petitioner came outside, and respondent and his son told petitioner "that they were going to kick [his] ass." That evidence is legally insufficient to establish a qualifying contact. There is no evidence that petitioner feared "imminent and serious personal violence" by respondent," nor is the record sufficiently developed to establish that respondent's statement was "objectively likely to be followed by unlawful acts." *Rangel*, 328 Or at 303 (legal standard); *see, e.g.*, *S. L. L. v. MacDonald*, 267 Or App 628, 633, 340 P3d 773 (2014) (considering contextual information and past events to assess whether a statement qualified as a threat). Statements that are "offensive, hostile, and aggressive" but that do not rise to the level of a "threat" under *Rangel*—that is, a threat of imminent and serious physical personal violence—are not qualifying contacts. *S. A. B. v. Roach*, 249 Or App 579, 585, 277 P3d 628 (2012).

Second, on multiple days in late December 2023, respondent yelled over the fence at petitioner's five-year-old grandchildren, who were playing in petitioner's backyard, including telling them to "shut their fucking mouths." Even assuming *arguendo* that petitioner's grandchildren qualify as immediate family or household members, *see* ORS 163.730(4) - (5) (defining those terms), there is nothing in the record that would allow respondent's statements to be viewed as unequivocal threats of imminent physical violence, as distinct from "offensive, hostile, and aggressive" but protected speech. *See, e.g.*, *Swarringim v. Olson*, 234 Or App 309, 314, 227 P3d 818 (2010) (holding that the respondent cursing at the petitioner's nine-year-old daughter did not meet the *Rangel* standard); *Goodness v. Beckham*, 224 Or App 565, 577-78, 198 P3d 980 (2008) (holding that profane and offensive emails did not meet the *Rangel* standard,

---

According to petitioner, respondent had regularly "harassed" him and his wife about noise from the yard, had called the police on them several times, had "verbally assaulted" petitioner's wife and called her "names" on multiple occasions, and once threatened petitioner with a "mass weapon." The foregoing testimony is too vague as to exactly what was said and the circumstances, as well as when the incidents occurred, to establish a qualifying contact for SPO purposes. Petitioner also testified that respondent had threatened to kill and in fact killed seven of his wife's cats with traps in respondent's backyard. (Respondent denied doing so, and the trial court made no findings on that issue.). However, the record is silent as to when that allegedly occurred.

due to the absence of an unequivocal threat of imminent violence).

Because the evidence was legally insufficient to establish a second qualifying contact in the two-year period, the trial court erred in entering the SPO.

Reversed.