No. 358 April 29, 2026 203

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

J. J. M.,
*Petitioner-Respondent,*

*v.*

S. N.,
*Respondent-Appellant.*

Multnomah County Circuit Court
24SK02571; A185281 (Control)

F. I.,
*Petitioner-Respondent,*

*v.*

S. N.,
*Respondent-Appellant.*

Multnomah County Circuit Court
24SK02570; A185303

Erin E. Kirkwood, Judge.

Submitted February 5, 2026.

Rankin Johnson and Rankin Johnson Law, LLC, filed
the brief for appellant.

David Wallace and Wallace Law Firm filed the brief for
respondents.

Before Shorr, Presiding Judge, Powers, Judge, and
O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

In these consolidated appeals, respondent appeals from two judgments entering permanent stalking protective orders (SPOs) against him. Respondent raises two assignments of error, assigning error to the trial court's grant of the SPO as to his neighbor, J, and the trial court's grant of the SPO as to J's girlfriend, F, who resided with J. We refer to J and F as petitioners. We affirm for the following reasons.

Neither party requests *de novo* review, and this is not an exceptional case that merits exercising our discretion to review *de novo. See* ORS 19.415(3)(b) (granting this court discretion to review *de novo*); ORAP 5.40(8) (limiting exercise of *de novo* review to exceptional cases). Therefore, "[w]e review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021). We view the evidence and all reasonable inferences in the light most favorable to petitioners and determine whether the record was sufficient to support the entry of an SPO. *C. L. C. v. Cordell*, 318 Or App 654, 655, 508 P3d 73 (2022).

SPOs are governed by ORS 30.866. To obtain an SPO, a petitioner must prove by a preponderance of the evidence that: (1) the respondent made two or more unwanted contacts with the petitioner or a member of the petitioner's immediate family or household within the past two years; (2) each contact gave rise to a subjective alarm that was objectively reasonable; and (3) the contacts taken together have given rise to subjective apprehension regarding the personal safety of the petitioner or their immediate family or household member that is objectively reasonable. *C. J. R. v. Fleming*, 265 Or App 342, 348, 336 P3d 534 (2014). In ORS 163.730, the legislature defined some of the terms it used in ORS 30.866. As relevant here, under ORS 163.730(3), "[t]he contact may consist of, among other things, coming into the person's visual or physical presence, following the person, waiting outside the person's home, property, place of work or school, or sending or making written communications of any kind." *Habrat v. Milligan*, 208 Or App 229, 235, 145 P3d 180 (2006). "'Household member' means any person residing in

the same residence as the victim." ORS 163.730(4). In this case, F lived with J in the same residence and thus they are each a household member of the other. Therefore, we will affirm the trial court's decision if there are two qualifying contacts as to J and two as to F, and in each case, those qualifying contacts could include contacts with either J or F because they are household members.

When speech is involved, Article I, section 8, of the Oregon Constitution limits the type of speech that qualifies as a contact. Only speech that constitutes a "threat" qualifies. *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) ("If the contact in question amounts to communication by speech or writing, only a threat will be sufficient to 'cause apprehension or fear resulting from the perception of danger,' as ORS 163.730 requires."); *K. R. v. Erazo*, 248 Or App 700, 705, 274 P3d 214 (2012) ("[I]f a 'contact' involves speech, Article I, section 8, of the Oregon Constitution requires proof that it is a threat."). A threat "is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *Rangel*, 328 Or at 303. A threat is not "the kind of hyperbole, rhetorical excesses, and impotent expressions of anger or frustration that in some contexts can be privileged even if they alarm the addressee." *Id*. (internal quotation marks omitted). Speech that does not qualify as a threat under *Rangel* may not itself be treated as a qualifying contact for SPO purposes, but it may still be considered as "relevant context" for nonexpressive conduct. *Habrat*, 208 Or App at 236-37.

Respondent argues that the trial court erred by granting the SPOs because the record does not show repeated threatening contacts. Respondent specifically argues that his conduct is required to meet the standard to qualify as a threat under *Rangel* because it was communicative and expressive, and that his conduct does not meet that standard. Petitioners argue that respondent's conduct was nonexpressive and thus the conduct does not have to meet the *Rangel* standard. Petitioners also argue that even if respondent's conduct is expressive and subject to the

standards under *Rangel*, the trial court correctly found that the conduct amounts to a "threat."

We conclude that the trial court did not err. The record supports the trial court's determination that respondent engaged in at least two qualifying contacts.

First, the record contains evidence that respondent approached J when J started his motorcycle in his driveway, came within inches of J's helmet's face shield, and spit on J. J testified that the conduct was threatening, intimidating, and caused J to feel panicked. Respondent's conduct forced J to back up quickly on the motorcycle, downhill, toward a busy street, causing J to risk falling over or backing into traffic. That evidence supports the determination that respondent's conduct put J in subjective and objective reasonable alarm and fear for his personal safety and thus amounted to a qualifying contact. That conduct does not constitute speech under Article I, section 8, and thus the *Rangel* analysis does not apply.

Second, under our case law and based on the trial court's factual findings, respondent's conduct in banging against or running into an old, rickety fence constitutes non-expressive conduct, but the statements of expressing sexual violence against J that accompanied respondent's force against the fence constitute expressive conduct. Although the expressive contacts by themselves are not enough to qualify as a contact, we consider them when evaluating the contact as a whole. *Habrat*, 208 Or App at 236-37. Viewed as a whole and under our standard of review, respondent's conduct of banging against an old fence with enough force that J feared it would fall, while making statements that J could reasonably interpret as threats of sexual violence against him, qualified as a contact under the SPO statute.

Thus, considering both the expressive and nonexpressive conduct together, respondent's conduct put J in subjective and objective reasonable alarm and fear for his personal safety. Therefore, there is sufficient evidence to establish two or more qualifying contacts as to J.

We reject respondent's challenge to the SPO involving F for the same reasons. The trial court in its verbal ruling

explained that the SPO involving F was based on both of the qualifying contacts involving J. The court also determined that respondent's conduct and statements toward F constituted qualifying contacts. The judgment continues the SPO involving F based on qualifying contacts involving F and based on qualifying contacts against a household member, J. Even assuming that respondent's statements and conduct toward F did not constitute qualifying contacts, the record contains sufficient evidence that respondent's qualifying contacts with J also put F in subjective and objective reasonable alarm and that F feared for J's personal safety based on those contacts. Therefore, because we conclude that there was sufficient evidence to establish two or more qualifying contacts under ORS 30.866(1) as to J and we conclude that respondent's conduct put F in subjective and objective reasonable alarm and fear for J's personal safety, on this record, there was sufficient evidence to establish two or more qualifying contacts under ORS 30.866(1) as to F.

Affirmed.